## Reiser *v.* Smith, Appellant.

Argued October 3, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*J. Campbell Brandon*, with him *W. D. Brandon*, of *Brandon & Brandon*, and *Hugh S. Millar*, for appellant.

*William S. Doty*, with him *Thomas A. Thornton*, of *Doty & Thornton, Alexander J. Bielski* and *John B.* and *Thomas H. Greer*, for appellee.

OPINION BY MR. JUSTICE MAXEY, December 5, 1938:

Plaintiff brought this action in trespass against defendant for personal injuries sustained as the result of a collision of the automobile in which he was riding as a guest and a truck belonging to the Pennsylvania Department of Highways and operated by defendant.

On the afternoon of July 7, 1933, the plaintiff, Robert J. Reiser, accepted the invitation of Thomas J. Orrie, to go with him in his Lincoln Sedan to Mars from Crider's Corners. Both of these men knew that the road on which they were going to travel between these two points was being resurfaced and they were also familiar with the method of resurfacing roads. This work had begun at Crider's Corners and extended eastward toward Mars. It appears from the evidence that Orrie drove his car eastward along this highway and that limestone was being rolled by two State Highway Department rollers, which they passed during their approximately two and a half mile ride to Gillespie Hill. The crest of this hill was very sharp from each side and a view of the road approaching from either side was restricted to a very short distance, which fact was known to Orrie, to the plaintiff and also the defendant. The limestone extended to the "very top" of the hill and there was fresh oil on the other side. Both plaintiff and defendant estimated the width of the improved part of the road at 14 feet. When Orrie and the plaintiff arrived at the crest of this hill, they saw facing them a truck to which was attached a "power broom," the equipment of the Highway Department. The two vehicles collided, resulting in in-

juries to plaintiff. As to what caused the collision there is a dispute.

When this case was first tried the jury returned a verdict for plaintiff in the sum of $7,416.85. A new trial was granted but a motion for judgment n. o. v. was refused. From this refusal defendant took an appeal but it was unavailing. (See 328 Pa. 292, 195 A. 56.) At the close of the second trial, the jury returned a verdict for plaintiff in the sum of $6,500. Defendant's motions for a new trial and for judgment n. o. v. were refused. This appeal followed.

Reiser, the plaintiff, testified that the automobile in which he was riding went up the hill in second gear and that its horn was blown just before the top of the hill was reached, that the car was proceeding at 10 to 15 miles an hour, that there was a truck about 30 or 35 feet away, in front of them on their side of the road, that the horn of Orrie's car was blown again, and that, as Orrie was about to pass the truck, Smith, its driver, started it and ran it into the right side of the car, striking "about the middle of the front door," forcing the car up against the bank on the other side and causing plaintiff's injuries. Plaintiff was then taken to a doctor in Mars for medical treatment. He also testified that the highway in question was not closed to the public. On cross-examination he was asked these questions and gave these answers: "Q. After you reached the top of the hill, did this man who was driving the car slow up the machine or increase its speed? A. No, he was going slow; he wasn't going fast. Q. The driver didn't put on any brakes? A. Not that I noticed. Q. Did you call to him [the driver] or make any outcry when you saw the truck? A. No, sir." He further testified on cross-examination that he had not noticed the truck moving until he got up close to it and then it was "moving slowly," that he did not notice the sedan slide or increase its speed as it started on the down grade. On re-direct examination he was asked: "Was there no one on top of the hill to warn

you or the driver of your car that the highway truck was on its [the car's] side of the highway right over the brow of the hill?" and he answered, "No."

Orrie, the driver and owner of the sedan, corroborated the plaintiff as to the condition existing when they came to the top of the hill, as to the truck running into the side of his car, as to receiving no warning on top of the hill that the truck was on the wrong side of the road, and as to his car not sliding in the oil. He estimated that he was traveling "between 15 and 20 miles" an hour and said that he did not think he was going any faster when he got over the hill. He also testified that he saw no barricade of any kind between the intersection of the road at Crider's Corners and Gillespie Hill, but that there was a "fresh oil" sign at the intersection.

Plaintiff's witness Koegler, who resided at the intersection of this highway at Crider's Corners, corroborated Orrie as to there not being any "barricade of any kind" on the road and that there was on it a "fresh oil" sign, 20 or 25 inches square, on a telephone pole, about 25 feet from the intersection.

Defendant Smith testified that he was pulling behind the Ford truck (weighing 4,500 pounds) a "power broom" (weighing 3,000 pounds) which had four wheels and which he had used that day in sweeping the highway, that at the time of the accident he was taking it back to the schoolhouse to the place where it was stored, that as he approached the top of the hill and owing to the oil on the road, the wheels of his truck began to slide around, that his motor stalled and when he applied the brake, the broom and the truck ran backward down the hill and across the road and came to rest with the left rear wheels of the sweeper up against the bank on the south side, his truck on the south side at an angle, with its front somewhere near the middle of the road, that the truck "just got stopped when he [Orrie] came over the hill" on the right-hand side of the road, that the car suddenly swerved to the left and hit the front end of the

truck which "was not moving at the time," that Orrie's car then bounced over to the left side of the road, and the distance between the vehicles when they came to rest was eight to ten feet, and that Orrie's car came to rest ten feet nearer Mars than the front of the truck, and that there was room to drive between the truck and the sedan immediately after the collision. Robert Harris, who was riding on the seat of the sweeper that was being towed by the truck, testified to the same state of facts. Smith also testified that it "seemed to him" that the Orrie car "skidded," that it came sideways against the truck, and that the sweeper took "about half the road." He estimated the distance from the top of the hill to the truck at 55 feet and the speed of the sedan at "about 25 miles an hour." He also said that he did not hear any horn blown. Harris testified that he could not estimate the speed of the sedan, that he jumped from the sweeper because the sedan "was coming and I figured they couldn't do anything else but hit," and that he could not tell whether the sedan skidded or slipped on the highway. Hayes, a highway workman, testified that the "only skid marks you could see" was "where the truck skidded," and that he could not see any skid marks "above the truck," "only a track in the oil where the car went," "a wide track" which "led over to the sedan."

When this case was before us a year ago, 328 Pa. 292, 195 A. 56, we said: "Nor can we accept defendant's contention that plaintiff failed to make out a prima facie case. . . . Our review of the record makes it clear, however, that the questions of negligence and contributory negligence were for the jury."

We do not find in this record any "incontrovertible physical facts" which indelibly stamp falsity on the testimony offered in behalf of plaintiff, nor do we find it physically impossible for the accident to have happened in the manner described by the plaintiff and his witnesses. Appellant refers to the testimony of certain witnesses as "incontrovertible evidence." The testi-

mony thus referred to is as to the "swerving" of the car in which plaintiff was a guest so that its right side struck the front end of the state highway truck driven by defendant, as to the oily, slippery condition of the road, and as to the fact that the truck "with its dragging burden of 3,000 pounds of broom and sweeper slid into the ditch." Appellant adds: "And yet, with these incontrovertible physical facts in evidence, the plaintiff would have the court believe that this hampered, weighted truck, on an oily, slippery road, jumped out, bounded out and struck the Lincoln car in which the plaintiff, Reiser, was riding." We said in *Hostetler v. Kniseley,* 322 Pa. 248, 250, 185 A. 300: "Incontrovertible physical facts are never established by oral evidence as to position, speed, etc., of movable objects."

In the instant case the clear cut conflict of testimony presented a problem for solution by a jury. The court would not have been justified in holding as a matter of law that plaintiff had not made out a case. Nor do we find anything in this record which would have warranted the court in declaring as a matter of law that the plaintiff was guilty of contributory negligence.

The judgment is affirmed.