Guy A. GREEN, Plaintiff,

v.

**KINNEY SHOE CORPORATION, Defendant.**

Civ. A. No. 88–0365.

United States District Court,
District of Columbia.

April 19, 1989.

---

Gary S. Marx, Robert N. Levin and Philip Hudock, Hudock & Levin, Washington, D.C., for plaintiff.

A Neal Barkus, Hunton & Williams, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

REVERCOMB, District Judge.

Defendant Kinney Shoe Corporation ("Kinney") has moved *in limine* to exclude certain witnesses proposed by the plaintiff to give expert testimony at trial. Oral argument was heard on February 16, 1989. In this memorandum and order, the Court grants in part Kinney's motion.

## I. Introduction

This case is an employment discrimination suit brought under both Title VII of the Civil Rights Act of 1964 and District of Columbia law, the latter of which entitles the plaintiff to a jury. Plaintiff Guy A. Green, who was a Kinney store manager in Texas, contends that he moved to the Washington, D.C., area with an understanding from Kinney that he would be given one of the first manager's positions that became available in the Washington, D.C., area. Kinney did not offer him a manager's spot, however, but employed him as an assistant in a largely black area of suburban Maryland. Mr. Green contends that Kinney's actions toward him were racially motivated.

Expert testimony is admissible under the Federal Rules of Evidence if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R. Evid. 702. This standard is "broadly phrased" and is meant to make admissible a wide range of expert opinions on a wide variety of subjects. *See id.* advisory committee's notes; *Ernst v. Ace Motor Sales Inc.*, 550 F.Supp. 1220, 1223–24 (E.D.Pa. 1982), *aff'd*, 720 F.2d 661 (3rd Cir.1983). As broad as the standard is, however, expert testimony should not be admissible when the proposed testimony infringes on one of the decisions that is entrusted solely to the jury—e.g., an examination of the credibility of witnesses—or when it runs counter to conclusions of law, many of which are themselves amalgams of expert opinion crafted by courts and legislatures.

A court should exercise special caution in admitting expert testimony on the issue of evaluating an employer's motivations in discrimination cases. To deal with the always-difficult problem of determining motivations, the courts have developed precise tests and standards for setting out a *prima facie* case, validating tests with adverse impact, and making other legal conclusions. These standards cannot be contradicted by an expert who would, for example, find a *prima facie* of discrimination in an employer's hiring statistics when, un-

der the legal standard, no *prima facie* case exists. Nor should a court accept testimony from an expert who would conclude that a promotion test is not discriminatory when, under the proper legal analysis, the test is shown to have an adverse impact and is not validated as job-related. To admit such evidence would be to allow improperly the finder of fact to consider rejecting the policy decisions and evidence standards that have been imposed on discrimination trials by higher courts.

## II. Analysis and Conclusions

With these cautionary considerations in mind, the Court considers Kinney's objections to the testimony of three experts that the plaintiff wishes to call at trial.

### A. Paul Katz

The plaintiff seeks to offer expert testimony from Paul Katz, a "compensation consultant" who helps businesses determine the appropriate level of salaries and wages and helps develop examinations and training programs. Mr. Katz would testify about (1) the significance of Kinney's use of subjective criteria in promoting employees, (2) Mr. Green's qualifications to be a manager as compared with those hired instead of him, and (3) his statistical analysis of the level of minority representation among Kinney's managers.

■ The Court refuses to permit Mr. Katz to testify about the significance of Kinney's use of subjective criteria in promoting employees. It should be clear to any reasonable person that a subjective promoting process could enable an employer to hide discrimintory intent. Indeed, this kind of argument may be made, based on the evidence, by lawyers in closing argument. The finders of fact do not need expert testimony on this point. Indeed, such testimony may be harmful, in that the finders of fact may be led to believe that subjective hiring is inherently suspect under discrimination law, whereas in fact it is perfectly lawful for employers to use a subjective promotion process.[1] *See, e.g.,*

---

1. The United States Supreme Court has given mixed signals on whether subjective hiring crite-

*Casillas v. Department of the Navy,* 735 F.2d 338, 345 (9th Cir.1984); *Pinckney v. County of Northampton,* 512 F.Supp. 989, 1001–02 (E.D.Pa.1981). Such an opinion regarding the use of subjective criteria would be substantially more prejudicial than probative. Fed.R.Evid. 403.

■ In addition, the Court will not permit Mr. Katz to testify in regard to a comparison of employee qualifications. Again, this type of evaluation requires no special expertise and may be argued by lawyers on the evidence. Moreover, the factors that Mr. Katz proposed to use were not those that Kinney was entitled to, and chose to, use. The finders of fact should not be led to believe that Mr. Katz's proposed factors are any more valid than those used by Kinney. Courts have correctly refused expert testimony on this point. *See e.g., Patterson v. McLean Credit Union,* 805 F.2d 1143, 1147 (4th Cir.1986).

■ Finally, the Court will not permit Mr. Katz, who is not a statistician, to testify about his impressions of statistical evidence. The Court requires that any statistical inferences be made through statistical tests approved for use in discrimination cases. The Court also prefers that a qualified statistician—such as Dr. Milton Goldsamt, whom the Court has permitted the plaintiff to call at trial—make such calculations. If this is not possible, however, the Court *would* permit Mr. Katz to make and explain the appropriate statistical test, as long as the test is done in the proper method, and as long as Mr. Katz is prepared to explain accurately the statistical significance of the results. Parties should not be deprived of the opportunity to present the results of fairly simple statistical tests simply because they cannot obtain the services of a trained statistician.

**B. Eugene Walton**

■ Mr. Walton, a personnel consultant, would testify about the implications of the fact that Kinney does not have an affirmative action program for blacks. He has stated that the lack of such a plan by Kinney "shows a reckless disregard for the principles and practices of equal employment opportunity in its personnel system." While it is true that persons have differing views on affirmative action, it is clear that Mr. Walton's opinions have nothing to do with the state of the law on affirmative action, which has been crafted by the courts to a considerable extent since *United Steelworkers of America v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979). For example, it is clear that neither the existence nor the lack of an affirmative action program has persuasive legal significance in determining the wholly separate issue of whether an employer had discriminatory intent. *See, e.g., EEOC v. Judson Steel Co.,* 33 Fair Empl. Prac. Cas. (BNA) 1286, 1293–94, 1982 WL 227 (N.D.Cal.1982). In sum, Mr. Walton's opinion testimony would cloud the issue of whether Kinney discriminated against Mr. Green and would be substantially more prejudicial than probative.[2]

**C. Tommy Shaw**

■ Mr. Shaw is a personnel research psychologist who would testify to his opinions concerning Kinney's promotion criteria. The Court will not permit Mr. Shaw to offer his opinions on the use of subjective criteria, for the same reasons that it will not permit Mr. Katz to testify on this topic. The Court also will not permit Mr. Shaw to

---

ria are desirable in the effort to combat racial discrimination in employment. In the groundbreaking *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Court in essence criticized the use of objective tests and standards for employees, concluding that such tests often are barriers to advancement by blacks. By 1988, however, the Court was critical of subjective factors, concluding implicitly that it is perhaps easier to hide discriminatory intent with a subjective hiring process than it is with an objective process. *See Watson v. Fort*

*Worth Bank & Trust Co.,* —— U.S. ——, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

**2.** The Court does not, however, accept Kinney's argument that Mr. Walton's testimony should be excluded because he has no experience analyzing employment in the private sector. Questions regarding discriminatory intent, etc., do not necessarily depend on the whether the employer is in the public or private sector.

testify about the implications of the lack of validation for subjective factors used by Kinney. Validation is not required unless a subjective criterion is found to have an adverse impact on blacks. *See Watson,* 108 S.Ct. 2777. An expert cannot not be permitted to testify to his opinion that lack of validation evidences discriminatory intent, when the courts have specified that cases of discrimination *must* be proved by other, more precise, means.

In sum, it is

ORDERED that the plaintiff will not be permitted to offer expert testimony from Mr. Walton or Mr. Shaw and that the plaintiff will be permitted to offer expert testimony from Mr. Katz only to the extent stated in this memorandum.